Case 3:22-cv-00178   Document 57   Filed on 01/23/24 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
January 23, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

### GALVESTON DIVISION

No. 3:22-cv-178

BEN E. HARRIS, *PLAINTIFF*,

v.

ASCEND PERFORMANCE MATERIALS TX, INC., *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant's motion for partial summary judgment on the plaintiff's age-discrimination claim. Dkt. 44. Having reviewed the motion, the summary-judgment record, and the applicable law, the court will grant the motion.

**I.   Background**

Ascend Performance Materials, TX, Inc., is an international company that operates, maintains, and staffs a chemical-production facility in Alvin. Dkt. 8 ¶¶ 7–8. Ben Harris has worked at this facility since 1991. *Id.* ¶¶ 4, 10. From 2012 to 2021, Harris worked as a "Shift Lead."

In February 2021, Winter Storm Uri caused widespread damage in Texas, resulting in a sudden shutdown of Ascend's Alvin facility. Dkts. 44 ¶ 5; 8 ¶ 13. A month later, Harris served as Shift Lead during an attempted restart of equipment within the plant. *Id*. But the restart did not go to plan and the entire procedure had to be repeated the next day. Dkt. 44 ¶ 6. In a meeting held on April 20, 2021, Ascend demoted Harris from his position as Shift Lead, citing concerns about his leadership during the failed restart procedure. Dkt. 8 ¶ 14.

Harris sued Ascend in state court and Ascend timely removed. Dkt. 1. He brings claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and for retaliatory discrimination under the Texas Workers' Compensation Act. Dkt. 8. The court previously granted Ascend's motion for summary judgment as to the Workers' Compensation Act claim. Dkt. 56.

## II.   Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must

set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.*

## III. Evidentiary Objections

Ascend has moved to strike nearly every exhibit Harris has offered in response to its summary-judgment motion on multiple grounds. Dkt. 47.

At the summary-judgment stage, parties may use documents and other materials to support their contentions that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(a). Evidence cited to dispute a fact "need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). While the substance of the evidence used to "dispute a fact on summary judgment must be admissible," a party may present it in a form that would not be admissible at trial. *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 MOORE'S FEDERAL PRACTICE-CIVIL ¶ 56.91 (2017)).

First, Ascend objects to Harris's personal affidavit on numerous grounds. Dkt. 47-1 at 1. The court will deny this objection. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 289 (5th Cir. 2020). "A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." *C.R. Pittman Const. Co. v. Nat. Fire Ins.*, 453 F. App'x 439, 443 (5th Cir. 2011).

Though Ascend may disagree with some of Harris's statements, he clearly has relevant first-hand knowledge of his own employment. Further, though portions of the affidavit contain inadmissible hearsay, Harris can relay these personal understandings of events in an admissible form at trial. *Heller v. Shahroodi*, No. H-17-2544, 2019 WL 1556315, at *3 (S.D. Tex. Feb. 20, 2019) ("The [c]ourt may consider hearsay at the summary[-]judgment stage if the hearsay could be reduced to a form admissible at trial."). Harris's affidavit is admissible summary-judgment evidence.

Second, Ascend objects to various interview notes as double hearsay, and correctly argues that the business-records exception does not necessarily resolve the issue. But the majority of the objected-to statements are admissible as admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D) (admission of employer's "agent or servant concerning a matter within the scope of the agency or employment" admissible as non-hearsay). The statements by Harris's coworkers describing the failed restart procedure, which they witnessed or participated in, are clearly within the scope of their employment.

The remaining objections made in bulk to exhibits 1-A through 1-Z are also overruled. Ascend makes cursory objections to dozens of exhibits, primarily on grounds of relevance, speculation, and conclusory statements.

Dkt. 47 at 5–8. Once again, summary-judgment evidence "need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting,* 835 F.3d at 534. These cursory objections fail to convince the court that Harris has not met this standard.

Ascend's objections to Harris's summary-judgment evidence are overruled and the court will consider the entire summary-judgment record. Dkt. 47.

## IV. Analysis

Harris contends that his demotion from Shift Lead in April 2021 was wrongfully motivated by age in violation of the ADEA. Dkt. 8 ¶ 21. An age-discrimination claim under the ADEA requires a plaintiff to prove "that age was the 'but-for' cause of the challenged employer decision." *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78, (2009)). For claims that do not present direct evidence of discrimination, as here, courts evaluate the discrimination claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Williams*, 818 F. App'x at 319; *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015).

Under this framework, the plaintiff must first present a prima facie case of discrimination. *Goudeau*, 793 F.3d at 474. If the plaintiff meets this hurdle, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the employment decision." *Id.* Finally, the plaintiff may then attempt to "prove by a preponderance of the evidence that the [employer's proffered reasons] were not its true reasons but were a pretext for discrimination." *Id.*; *see O'Brien v. Methodist Hosp.*, No. 4:20-CV-4084, 2022 WL 18864879, at *5 (S.D. Tex. Dec. 23, 2022).

Ascend argues it is entitled to summary judgment both because (1) Harris cannot establish a prima facie case of age discrimination and (2) Ascend has proffered legitimate, non-discriminatory reasons for the decision to demote Harris. Dkt. 44 ¶ 1.

### A. Prima Facie Case

To make a prima facie case of age discrimination, Harris must show that: (1) he belongs to a protected group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside of his protected group or a similarly situated employee outside of his protected group was treated more favorably. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022); *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021).

Ascend challenges only the final element, arguing Harris cannot show that he was replaced with someone substantially younger. Dkt. 44 ¶ 8. Harris, then age 65, was replaced by a 56-year-old employee. Dkts. 45-1 ¶ 2; 26 ¶ 16. While Harris argues this nine-year gap is clearly substantial, there is no bright-line age gap at which this fourth element is satisfied. *See Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 918 (5th Cir. 2015) (noting that a five- or six-year age gap is a close call). Here, a nine-year age gap between employees both within a protected class presents, at least arguably, a close call. But, when the age gap is a "close-call," the relative ages of the employees are more probative of the ultimate issue of but-for causation "rather than as a basis for finding that the employee has failed to make a prima facie case." *Id.* Indeed, Harris's burden to present a prima facie case is not an onerous one. *Sanders v. Anadarko Petroleum Corp.*, 108 F. App'x 139, 142 (5th Cir. 2004). For the purposes of establishing Harris's prima facie case, an age gap of nine years is sufficient. *Temple v. WFAA-TV, Inc.*, No. 3:21-CV-1250-N, 2023 WL 146249, at *4 (N.D. Tex. Jan. 9, 2023) (holding nine-year age gap sufficient to support prima facie case of age discrimination). As Harris clearly meets the remaining uncontested elements, he has established a prima facie case of age discrimination.

### B. Non-discriminatory Reasons for Demotion

Ascend next argues that Harris's demotion was not due to age, but due to poor performance in his leadership role. Dkt. 44 ¶ 12. A defendant satisfies its burden by "articulat[ing] a nondiscriminatory reason with sufficient clarity to afford [a plaintiff] a realistic opportunity to show that the reason is pretextual." *Watkins*, 997 F.3d at 282 (quotations omitted). A reason "of 'poor work performance' is adequate when coupled with specific examples." *Burton v. Freescale Semiconductor*, Inc., 798 F.3d 222, 231 (5th Cir. 2015).

Ascend has clearly and consistently maintained that Harris was demoted for poor performance, specifically for complications related to the restart following Winter Storm Uri. Dkts. 9 ¶ 14; 44 ¶ 12; 44-2 at 2. This consistent and facially valid non-discriminatory justification is adequate to afford Harris "a realistic opportunity to show that the reason is pretextual." *Watkins*, 997 F.3d at 282.

### C. Pretext

As Ascend has articulated a non-discriminatory reason for the demotion, Harris must present "substantial evidence" that Ascend's stated reasons for demoting him are pretext for discrimination. *Owens*, 33 F. 4th at 826. "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial

judgment might reach different conclusions." *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). In short, Harris must show that reasonable minds could disagree as to whether his poor leadership performance—and specifically his leadership during the restart procedure—was indeed the reason for his discharge. Harris may meet his burden with "various forms of circumstantial evidence" tending to show that Ascend's stated explanation is "unworthy of credence." *Id.*

Harris presents four arguments in an attempt to undercut Ascend's stated rationale and to create an inference of discrimination: (1) his positive work performance, (2) the timing of his demotion, (3) Ascend's departure from its discipline policy, and (4) comments regarding his age and retirement.

### 1. Work Performance

Harris contends that Ascend's reasoning for his demotion is inconsistent and illogical as he was (1) consistently praised for his leadership ability and (2) simply following instructions during the failed restart. Dkt. 45 ¶¶ 17–20; 27–35.

First, Harris's performance reviews before the restart incident were, at best, a mixed bag. His December 2020 performance review was complimentary overall, including specific positive remarks on his leadership.

Harris was lauded for displaying "good overall communication skill," "strong leadership/unit knowledge skills," and an "amazing perspective on how to succeed." Dkt. 45-1 at 5–7. Yet, this same review was critical of Harris for his hands-off leadership style, instructing him to engage with his team directly and to "ensure that they are executing the things he has instructed them to do." *Id.* at 7. Emails throughout 2020 confirm Ascend repeatedly encouraged Harris to be more directly engaged with his team. Dkt. 33-5.

Second, it is not altogether clear how or why Harris failed to conduct the restart in March 2021 as management desired. Recovering from Winter Storm Uri was a complex endeavor. *See* Dkts. 45 ¶ 31; 45-1 at 46–47. Sebastian Carmona, Harris's supervisor, described the challenge as "very fluid" with changes occurring "on a 12–24[-]hour basis." Dkt. 45-1 at 47. During the process, employees were leaving ad hoc notes on whiteboards and notebooks for the next crew to review and follow. Dkt. 45 at 32.

Reviewing the entire record, two critical facts emerge from the restart incident. On one hand, Harris clearly believed he was supposed to halt the restart procedure "at the point where caustic was going to be introduced." Dkts. 45 ¶ 35; 45-1 at 49. The previous Shift Lead specifically instructed him to do so. *Id.* So when the incident was investigated, he says he downplayed its severity not to shirk blame, but because he believed he was simply

following instructions. *See* Dkt. 45-1 at 49. Yet it remains that Harris did not adequately inform the next shift as to what steps he *did* take. *See* Dkt. 45-1 at 58; 44-1. And it was this uncertainty about what Harris's team had or had not done that forced the next shift to restart the process entirely. *Id.*

At best, drawing all inferences in favor of Harris, a reasonable factfinder could find his demotion was unjust or unfair. But the inquiry is not whether Ascend "made a wise or even correct decision to terminate" Harris. *Owens*, 33 F.4th at 826. "To survive summary judgment, [Harris] must produce sufficient evidence of implausibility to permit an inference of discrimination, not merely an inference that [Ascend's] proffered reason is false." *Id.* Indeed, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves,* 530 U.S. at 148. Even if Harris has created some reasonable doubt in Ascend's proffered reasoning, his remaining arguments must permit some inference of discrimination.

### 2. Demotion Timing

Harris alleges Ascend began recruiting his replacement in January 2021, even though the restart incident occurred that March. Dkt. 45 ¶ 23. Ascend offers a clear and concise explanation for this timeline, negating any

inference of pretext. Harris was not the only Shift Lead at the plant—he was one of four. Dkt. 48 at 11. Joshua Sharp, another Shift Lead, was terminated at the end of 2020. *Id.* The interviews conducted in January 2021, which Harris points to as evidence of pretext, were held to replace Sharp, not Harris. *Id.* ¶ 12. The fact that Ascend interviewed and hired a Shift Lead for a separate and distinct position prior to Harris's demotion is wholly irrelevant to any alleged age discrimination.

### 3. Adherence to Policy

Ascend maintains a "Discipline Policy" applicable to all employees. Dkt. 45-1 at 72. Harris argues Ascend's departure from this policy—by demoting him before an official warning—further detracts from Ascend's credibility.

For starters, the Discipline Policy contains a clear disclaimer that Ascend has the right to skip any step of the policy at their discretion. Dkt. 45-1 at 75. Ascend's actions, therefore, do not contradict the Discipline Policy. Further, even if Harris's demotion did depart from official policy, it only calls Ascend's proffered reasoning into question. It does nothing to show discriminatory intent.

### 4. Age-Related Comments

Finally, Harris offers multiple comments about his age and retirement plans as circumstantial evidence of discrimination. A plaintiff can use such comments in both direct- and indirect-evidence cases, but a different standard applies to each. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). In indirect-evidence cases, like here, a "less demanding" two-part test applies. *Id*. Harris must "show that the comments involve (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id*. at 457–58.

Harris's argument founders on the animus prong. "Courts typically only find a statement to be evidence of age discrimination in two situations. First, courts will find evidence of age discrimination where a statement references age in a derogatory or stereotypical way." *Id*. at 458. "Second, courts will find evidence of age discrimination where the employer's statement shows a desire to replace older employees with younger ones." *Id*. Neither situation is present here.

Harris primarily complains that his supervisors repeatedly questioned him about his retirement plans. Dkt. 45 ¶¶ 21, 42. But such remarks began

only *after* Harris inquired about Ascend's new early-retirement program, which rolled out in April 2020. Harris attended a "lunch and learn" about the new program, and later met with Bruce King, an Ascend human-resources employee, to get more details. Dkt. 45-2 at 5, 8. Harris told King that he wanted to work until July 2022. *Id.* at 8. After this conversation, several employees asked Harris when he planned to retire. Dkt. 45 ¶¶ 21, 45.

Such benign inquiries about retirement, especially in light of a newly implemented and widely discussed retirement program, do not show discriminatory intent. *McMichael*, 934 F.3d at 458 ("Commenting on [employee's] eligibility for retirement does not reference age in a derogatory or stereotypical way."); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993) ("musings about eventual retirement simply do not evidence discriminatory intent.").

Harris also alleges he was repeatedly the subject of age-related jokes. Dkt. 45 ¶ 42. Yet, the only specific joke Harris points to in the record is a joke made *by him*. Dkt. 46-2 at 12. In response to a question of "when are you going to retire", Harris simply quipped that a "horse couldn't drag me out of here." *Id.*

In summary, Harris has presented some evidence that his demotion, in light of contradictory instructions for the restart procedure, was arguably

unjustified. And he has shown, in light of Ascend's Discipline Policy, the demotion was likewise arguably harsh. While such attacks on the stated reasons *can* satisfy the employee's burden to establish pretext in the rare case, this is not one of them. *Owens*, 33 F. 4th 818, 826 n. 7. The "nature, extent, and quality" of the pretextual evidence must justify an "inferential leap" towards age discrimination. *Id.* Harris has not put forward evidence to justify such a leap. Questions and comments about retirement, in light of a recently enacted early retirement policy, do not permit such an inference.

In short, though a juror could reasonably question Ascend's stated reasons for Harris's demotion, "an inference of discrimination [would] be weak or nonexistent." *Id.* (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1338 (2d Cir. 1997)). Therefore, summary judgment is appropriate.

\*   \*   \*

The court grants Ascend's motion for partial summary judgment. Dkt. 44. As this is Harris's only remaining claim, the case is dismissed with prejudice. Final judgment will issue separately.

Signed on Galveston Island this 23d day of January, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE